IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEAN BEER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. 20-1486 |
| v. | : | |
| | : | |
| MONTGOMERY COUNTY, et al., | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO
DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULES 12(b)(6) and 12(b)(1)**

BROWN MCGARRY NIMEROFF LLC
Mary Kay Brown, Esquire
Raymond McGarry, Esquire
Jami B. Nimeroff, Esquire
2 Penn Center, Suite 610
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102
T:  (267) 861-5330

*Attorneys for Defendants Montgomery County,
Commissioner Dr. Valerie Arkoosh, Commissioner
Kenneth Lawrence, Commissioner Joseph Gale,
and Chief Operating Officer Lee Soltysiak*

# TABLE OF CONTENTS

I.      BACKGROUND ................................................................................................. 1

II.     ARGUMENT ...................................................................................................... 1

  A.  Standard on a Fed. R. Civ. P. 12(b)(6) Motion ................................................ 1

  B.  Count I of Plaintiff's Complaint for First Amendment Retaliation Should be
      Dismissed with Prejudice Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1). .... 3

    1.  The Speech At-Issue is Not Speech of Plaintiff Dean Beer ........................... 5

    2.  The Speech At-Issue is not Citizen Speech ................................................. 6

      a.  The Brief was Prepared by the OPD as a part of its Professional Duties ........ 7

      b.  The Brief Was Prepared by the OPD Using Its Specialized Knowledge .......... 9

  C.  Count II of Plaintiff's Complaint Under the Pennsylvania Whistleblower Law
      Should be Dismissed with Prejudice Pursuant to Fed. R. Civ. P. 12(b)(6) ......... 10

    1.  The Amicus Brief is not a Report Made by Plaintiff. ................................. 11

    2.  The Amicus Brief is Not a Report of Wrongdoing Because it did not Allege a
        Violation of the Law that Defendants are Charged with Enforcing. ............ 11

    3.  The Supreme Court of Pennsylvania is Not an "Appropriate Authority" ......... 15

  D.  Count III of Plaintiff's Complaint for Wrongful Discharge Should be Dismissed
      with Prejudice Pursuant to Fed. R. Civ. P. 12(b)(6). ................................... 16

    1.  The Claim Against the County Fails ........................................................ 16

      a.  Count III is Barred by the Pennsylvania Political Subdivision Tort Claims
          Act ................................................................................................. 16

      b.  Count III Does Not State a Valid Claim for Relief Since it Does Not   Forth
          a Clearly Defined Public Policy .......................................................... 18

    2.  Count III Should Be Dismissed as Against the Individual Defendants ............. 22

      a.  Count III is Barred by Governmental Immunity for High Public Officials ... 22

      b.  Count III is Barred by the Pennsylvania Political Subdivision Tort Claims
          Act ................................................................................................. 24

      c.  Count III is Barred Because the Decision to Terminate Could Not be Made
          by the Individual Defendants .............................................................. 27

  E.  Plaintiff's Request To Be Reinstated With a Contract and a "Just Cause"
      Termination Clause Must Be Stricken ........................................................... 28

  F.  The Court Should Refrain From Exercising its Supplemental Jurisdiction. ........... 29

III.    CONCLUSION .................................................................................................. 30

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ............................ 1, 2

*Ayala v. Philadelphia Board of Public Education,* 453 Pa. 584, 305 A.2d 877 (1973) .............. 16

*Azar v. Ferrari*, 898 A.2d 55 (Pa. Commw. Ct. 2006) ................................................................ 23

*Ballentine v. United States*, 486 F.3d 806 (3d Cir. 2007)) .......................................................... 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ............................................................ 1, 2

*Clark v. Modern Grp. Ltd.,* 9 F.3d 321 (3d Cir. 1993) ................................................................ 20

*Clay v. Advanced Computer Applications, Inc.*, 522 Pa. 86, 559 A.2d 917 (1988).................... 19

*Cuvo v. De Bias*, 339 F. Supp. 2d 650 (E.D. Pa. 2004), *aff'd in part, rev'd in part and*
   *remanded sub nom*, *Cuvo v. De Biasi*, 169 Fed. App'x 688 (3d Cir. 2006)............................. 25

*Damron v. Smith,* 616 F. Supp. 424 (E.D. Pa. 1985).................................................................. 25

*DeMuro v. Philadelphia Housing Authority*, No. 98-3137 1998 WL 962103
   (E.D. Pa. Dec. 22, 1998) ....................................................................................................... 17

*DeSimone v. Coatesville Area School District*, 248 F. Supp. 2d 387 (E.D. Pa. 2003)................ 17

*DeVatt v. Lohenitz*, 338 F. Supp. 2d 588 (E.D. Pa. 2004) .......................................................... 25

*Dewees v. Haste*, 620 F. Supp. 2d 625 (M.D. Pa. 2009) *aff'd,* 386 Fed. App'x 133
   (3d Cir. 2010).......................................................................................................................... 28

*Dougherty v. School Dist. of Philadelphia*, 772 F.3d 979 (3d Cir. 2014) ...................................... 3

*Durham v. McElynn,* 565 Pa. 163, 772 A.2d 68 (2001) ............................................................ 23

*Eshelman v. Commissioners of Berks County*, 62 Pa.Cmwlth. 310, 436 A.2d 710 (1981),
   *aff'd per curiam*, 502 Pa. 430, 466 A.2d 1029 (1983)............................................................ 14

*Factor v. Goode*, 149 Pa. Cmwlth. 81, 612 A.2d 591 (1992)..................................................... 23

*Field v. Phila. Elec. Co.,* 388 Pa.Super. 400, 565 A.2d 1170 (1989) ......................................... 20

*Finn v. City of Philadelphia,* 541 Pa. 596, 664 A.2d 1342 (1995) ............................................. 17

*Foraker v. Chaffinch,* 501 F.3d 231 (3d Cir. 2007)........................................................... 4, 5, 9, 10

*Fraser v. Nationwide Mut. Ins. Co.,* 352 F.3d 107 (3d Cir.2003) ............................................... 20

*Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231 (3d Cir. 2016)................. 4

*Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006)..................... passim

*Gardner v. Thomas G. Peoples, Jr.. President Judge of the Court of Common Pleas of*
   *Blair County*, 506 A.2d 479 (Pa. Commw. Ct. 1986)............................................................. 14

*Golaschevsky v. Commonwealth of PA*, 683 A.2d 1299 (Pa. Commw. Ct. 1996)....................... 12

*Goldinger v. County of Butler*, No. 89-632, 1990 WL 309411 (Pa. Com. Pl.
   September 6, 1990) ................................................................................................................. 18

*Gorum v. Sessoms,* 561 F.3d 179 (3d Cir. 2009) .................................................................. 5, 9, 10

*Gray v. Hafer*, 651 A. 2d 221 (Pa. Commw. Ct. 1994) ............................................................. 12

*Greenwood Partners, L.P. v. Cimnet, Inc*., 2003 WL 22238981 (E.D. Pa. Sept. 26, 2003) ........ 29

*Growth Horizons, Inc. v. Delaware Cty., Pa.,* 983 F.2d 1277, 1284 (3d Cir. 1993).............. 29, 30

*Haiden v. Greene Cty. Career and Tech. Ctr.,* No. 08–1481, 2009 WL 2341922
   (W.D. Pa. July 27, 2009)................................................................................................... 17, 27

*Hennessy v. Santiago,* 708 A.2d 1269, 1273 (Pa.Super. 1998) ............................................ 21, 22

*Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir. 2006) ........................................................... 3

*Holloway v. Brechtse*, 279 F. Supp. 2d 613 (E.D. Pa. 2003)...................................................... 25

*Holt v. Northwest Pa. Training Partnership Consortium, Inc.,* 694 A.2d 1134
   (Pa. Commw. Ct. 1997) ............................................................................................. 23, 24, 25

*Hunger v. Grand Central Sanitation*, 670 A.2d 173 (Pa. Super. 1996)........................................ 19
*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235
   (3d Cir. 2012) ................................................................................................................................ 6
*Jakomas v. McFalls*, 229 F. Supp. 2d 412 (W.D. Pa. 2002)........................................................... 14
*Katzenmoyer v. City of Reading,* 158 F. Supp 2d 491 (E.D. Pa. 2001) ......................................... 18
*Kiley by Kiley v. City of Philadelphia,* 537 Pa. 502, 645 A.2d 184 (1994) .................................. 17
*Kroen v. Bedway Security Agency*, 633 A.2d 628 (Pa. Super. 1993) ............................................. 20
*Kuzel v. Krause,* 658 A.2d 856 (Pa. Commw. Ct. 1995)................................................... 24, 26, 28
*L.J.S. v. State Ethics Commission*, 744 A.2d 798 (Pa. Commw. Ct. 2000)................................... 14
*Lancine v. Giles,* 132 Pa.Cmwlth. 255, 572 A.2d 827 (Pa. Commw. Ct.  1990) ......................... 17
*LaVerdure v. County of Montgomery*, 324 A.2d 123 (3d Cir. 2003) ............................................. 24
*Leiber v. County of Allegheny*, 654 A.2d 11 (Pa. Commw. Ct. 1994)........................................... 14
*Lindner v. Mollan*, 544 Pa. 487, 677 A.2d 1194 (1996)......................................................... 23, 24
*Malia v. Monchak,* 116 Pa.Cmwlth. 484, 543 A.2d 184 (1988)................................................... 23
*Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987)........................................... 16
*Matson v. Margiotti*, 371 Pa. 188, 88 A.2d 892, 895 (1952), *overruled on other grounds,*
   *Commonwealth v. Schab*, 477 Pa. 55, 383 A.2d 819 (1978) ...................................................... 23
*McLaughlin v. Gastrointestinal Specialists, Inc.*, 561 Pa. 307, 750 A.2d 283 (2000) ................ 19
*McNichols v. Commonwealth, Dep't. Of Transportation,* 804 A.2d 1264, 1267
   (Pa. Commw. Ct. 2002) ............................................................................................................... 18
*Montgomery v. City of Philadelphia*, 392 Pa. 178, 140 A.2d 100 (1958) .................................... 23
*Mosley v. Observer Publishing Co.*, 422 Pa. Super. 255, 619 A.2d 343 (1993) ......................... 23
*Munroe v. Central Bucks School Dist.*, 805 F.3d 454 (3d Cir. 2015)............................................... 3
*Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192 (3d Cir. 1993) .................. 2
*Phillips v. Cnty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008).......................................................... 2
*Plaza v. Herbert, Rowland & Grubic, Inc.*, No. 344 C.D. 2016, 2017 WL 519827
   (Pa. Commw. Ct. Jan. 30, 2017) ................................................................................................. 18
*Polite v. Rendell*, 2010 WL 1254334 (E.D. Pa. Apr. 1, 2010)...................................................... 30
*Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548 (3d Cir. 2002) .......................................... 2
*Rankin v. McPherson*, 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987) ............................. 3
*Renk v. City of Pittsburgh,* 537 Pa. 68, 641 A.2d 289 (Pa. 1994)................................................ 27
*Reuther v. Fowler & Williams, Inc.*, 386 A.2d 119 (Pa. Super. 1977) ......................................... 20
*Rooney v. City of Phila.*, 623 F. Supp. 2d 644 (E.D. Pa. 2009)..................................................... 18
*Rothrock v. Rothrock Motor Sales, Inc.*, 810 A.2d 114 (Pa. Super. 2002)............................ 19, 29
*Russo v. Allegheny County*, 125 A.3d 113 (Pa. Commw. Ct. 2015, *aff'd per curiam,*
   637 Pa. 398 (2016)....................................................................................................................... 15
*Sands v. McCormick*, 502 F.3d 263 (3d Cir.2007) ........................................................................ 2
*Scrip v. Seneca*, 191 A.3d 917 (Pa. Commw. Ct. 2018)................................................................ 14
*Sea v. Seif*, 831 A.2d 1288 (Pa. Commw. Ct. 2003)..................................................................... 12
*Shick v. Shirey,* 716 A.2d 1231 (Pa. 1998) ....................................................................... 20, 21, 22
*Snavely v. Arnold,* No. 08–2165, 2009 WL 1743737 (M.D. Pa. June 18, 2009)......................... 17
*Swift v. Department of Transportation*, 937 A.2d 1162 (Pa. Cmwlth. 2007)............................... 18
*Thomas v. Grimm*, 155 A.3d 128,  (Pa. Commw. Ct. 2017)......................................................... 15
*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966) . 29
*Weaver v. Harpster,* 601 Pa. 488, 975 A.2d 555 (2009)............................................................... 20
*Woodson v. AMF Leisureland Centers, Inc.,* 842 F.2d 699 (3d Cir. 1988) .................................. 19

iii

*Zugarek v. S. Tioga Sch. Dist.,* 214 F. Supp. 2d 468 (M.D. Pa.2002) .................................... 23, 24

**Statutes**
16 P.S. §9960.1 *et seq.* .................................................................................................... 27, 29
23 P.S. § 6311 .......................................................................................................................... 21
42 Pa.C.S. § 8541-8564 ................................................................................. 16, 17, 22, 26
43 P.S. § 1423 ......................................................................................................................... 10
43 P.S. §1422 .......................................................................................................................... 11
28 U.S.C. § 1367 .................................................................................................................... 29

**Other Authorities**
Const. Art. 5, § 1 ................................................................................................................... 13

**Rules**
Fed. R. Civ. P. 12(b)(1) ..................................................................................................... 1, 30
Fed. R. Civ. P. 12(b)(6) .................................................................................................. 1, 3, 15
Pa. R. Crim. P. 540 ............................................................................................................... 13

Defendants Montgomery County (the "County"), Commissioner Dr. Valerie Arkoosh ("Arkoosh"), Commissioner Kenneth Lawrence ("Lawrence"), Commissioner Joseph Gale ("Gale"), and Chief Operating Officer Lee Soltysiak ("Soltysiak") (collectively, the "Defendants"), pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure, file the within Motion to Dismiss Plaintiff's Complaint, and in support thereof, state as follows.

## I.      BACKGROUND

Plaintiff Dean Beer ("Plaintiff" or "Beer") filed this lawsuit against Defendants seeking damages in connection with the termination of his employment with Montgomery County as the Chief Public Defender. Plaintiff contends that he was fired in retaliation for the filing by the Montgomery County Office of Public Defender ("OPD") of an Amicus Curiae Brief (the "Brief") with the Pennsylvania Supreme Court on issues related to the bail practices of the courts located within Montgomery County and throughout the Commonwealth. The Complaint alleges claims for First Amendment Retaliation, violation of the Pennsylvania Whistleblower Law and for Wrongful Discharge in Violation of Public Policy. For the reasons set forth below, Plaintiff's claims must be dismissed with prejudice.

## II.     ARGUMENT

### A.      Standard on a Fed. R. Civ. P. 12(b)(6) Motion

Federal Rule of Civil Procedure 12(b)(6) provides that a cause of action may be dismissed when the complaint fails to state a claim upon which relief can be granted.  To survive such a motion, the complaint must: (1) assert a plausible claim; and, (2) set forth sufficient factual allegations to support the claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1941, 173 L. Ed. 2d 868 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Neither a "formulaic recitation of the elements of a cause of action nor naked assertions of fact devoid of further factual enhancement" is sufficient to withstand dismissal.  *Id*.  To satisfy

the *Twombly* and *Iqbal* standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (*citing Twombly*, 550 U.S. at 570). A claim has facial plausibility when enough factual content is plead that allows the court to draw the reasonable inference that the defendant is liable under the alleged claim. *Id*. (*citing Twombly*, 550 U.S. at 556). "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 1950. In addition, those facts constituting more than mere conclusions, and thus assumed true, must also "plausibly suggest an entitlement to relief." *Id*. at 1951. The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint and that justifies "moving the case beyond the pleadings to the next stage of litigation." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008) (*quoting Twombly*, 550 U.S. at 556).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). Therefore, the Court may consider the Amicus Brief, attached to hereto as Exhibit "A," because Counts I and II of the Complaint are based precisely on what is stated in the Brief, who made those statements and the fact that it was filed with the Pennsylvania Supreme Court.

2

**B.** **Count I of Plaintiff's Complaint for First Amendment Retaliation Should be Dismissed with Prejudice Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1).**

To establish a First Amendment retaliation claim, a public employee must show that his activity is protected by the First Amendment and that the activity was a substantial or motivating factor in the alleged retaliatory action.  If both elements are proved, the burden shifts to the employer to prove that the same action would have been taken even if the activity had not occurred. *Munroe v. Central Bucks School Dist.*, 805 F.3d 454, 466 (3d Cir. 2015) (*quoting Dougherty v. School Dist. of Philadelphia*, 772 F.3d 979, 986 (3d Cir. 2014)).

With respect to the first element, a public employee's speech is protected by the First Amendment when: (1) the employee spoke as a citizen; (2) the statement involved a matter of public concern; and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241–42 (3d Cir. 2006) (*quoting Garcetti v. Ceballos*, 547 U.S. 410, 418, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006)). A public employee does **not** speak "as [a] citizen" when he makes a statement "pursuant to [his] official duties." *Garcetti*, 547 U.S. at 421, 126 S.Ct. 1951. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Rankin v. McPherson*, 483 U.S. 378, 384–85, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987) (*quoting Connick v. Myers*, 461 U.S. 138, 147–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)).

In *Garcetti,* the Supreme Court described this inquiry as "a practical one," noting that "[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the

3

employee's professional duties for First Amendment purposes." *Id.* at 424–25, 126 S.Ct. 1951. Put another way, the First Amendment does not shield the consequences of "expressions employees make pursuant to their professional duties." *Id.* at 426, 126 S.Ct. 1951.

Following *Garcetti*, the Third Circuit Court of Appeals held that an employee does not speak as a citizen if the mode and manner of his speech were possible only as an ordinary corollary to his position as a government employee. For example, police officers do not speak as citizens when they object to police department policies by means of "police department counseling forms," as "[c]itizens do not complete internal police counseling forms." *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 243-44 (3d Cir. 2016).

The Third Circuit Court of Appeals has further held that a public employee's speech does not constitute citizen speech if the activity or speech performed is within the "scope of their routine operations." *See Foraker v. Chaffnich,* 501 F.3d 231, 241–42 (3d Cir. 2007). In *Foraker,* three State Police firearms instructors complained to their superiors about intolerable conditions at the firing range.  The HVAC system did not work properly, the bullet trap was malfunctioning, and officers and students at the range were experiencing elevated levels of heavy metals in their blood. *Id.* at 233. The officers complained up the chain of command and also met with the State Auditor investigating the facility. After this meeting, the officers' attorney read the statements they had made to the Auditor, verbatim, to the media. *Foraker,* 501 F.3d at 233. In affirming the grant of judgment as a matter of law to the Defendants, the court analyzed *Garcetti* and held that the officers' complaints to supervisors were made pursuant to their official duties because the issues they complained of related to their day-to-day employment responsibilities:

> [The officers] were acting within their job duties when they expressed their
> concerns up the chain of command because they needed to have a functioning bullet

4

> trap to conduct their educational programs and it was their special knowledge and experience with the bullet trap that demonstrated their responsibility for ensuring its functionality by reporting problems to their superiors.

*Id.* at 240.  The court noted that "[t]he special knowledge and experience referenced here is their daily interaction with the equipment, which puts them in the position to know when problems arose." *Id.* at 204 n. 6.

In *Gorum v. Sessoms,* 561 F.3d 179 (3d Cir. 2009), the Third Circuit Court of Appeals further refined its *Foraker* analysis. In *Gorum,* a tenured faculty member of a state university claimed he was dismissed in retaliation for advising an All–American football player in connection with a disciplinary hearing for violating the school's weapons possession policy, and for disinviting the school's President to speak at a prayer breakfast. The court rejected plaintiff's argument that, because he went above and beyond his specified job responsibilities, he was speaking as citizen rather than as an employee. Relying on its decision in *Foraker,* the court found that "Gorum's special knowledge of, and experience with" the school's disciplinary code gave him the opportunity to speak on the student's behalf, and it was Gorum's position as faculty advisory to the fraternity that allowed him to rescind the President's invitation to speak. *Id.* at 186. In reaching this conclusion, the court relied on the Supreme Court's direction in *Garcetti* that the "proper inquiry" into an individual's official duties "is a practical one." *Id.* at 185.

### 1.    The Speech At-Issue is Not Speech of Plaintiff Dean Beer

In this case, Plaintiff alleges that the Amicus Brief constitutes his expression of free speech. (ECF #1, Complaint ¶65).  Yet, as Plaintiff readily admits, the Brief was not filed by or on behalf of Plaintiff; but rather, on behalf of the OPD.  (ECF #1, Complaint ¶ 32).  More precisely, the Brief was filed on behalf of the Public Defender's Office by Lee Awbrey, Chief of Appeals, Office of the Public Defender. Plaintiff is not even a signatory, although he is listed on

the cover page.  (Ex. A, Brief, p. 20). The introduction to the Brief leaves no doubt as to whose

interest is being advanced: "[t]he Montgomery County Office of the Public Defender represents

indigent individuals facing criminal charges in all stages of their proceedings.  Our office has a

substantial interest in this matter."  (Ex. A, Brief, p. 1). Thus, Plaintiff has no standing to seek

the protections of the First Amendment for speech that factually is not even **his** speech. Thus, in

addition to dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure,

Plaintiff's Complaint must be dismissed under Rule 12(b)(1) of the Federal Rules of Civil

Procedure. "Under Fed. R. Civ.P. 12(b)(1), a court must grant a motion to dismiss if it lacks

subject-matter jurisdiction to hear a claim. "A motion to dismiss for want of standing is ...

properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *In re*

*Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir.

2012) (*citing Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)).

### 2.      The Speech At-Issue is not Citizen Speech

According to both the Complaint and the Brief, the Brief:

- was prepared, at least in part, by the staff of the Montgomery County OPD and

specifically by the Chief of Appeals, Lee Awbrey (ECF #1, Complaint ¶32);

- outlines the practices of the courts in Montgomery County and discusses specific

cases handled by the OPD as examples to support arguments made in the brief. (ECF #1,

Complaint ¶¶ 35-38; Ex. A, Brief, generally);

- was sent to the Solicitor and Soltysiak, Plaintiff's superior, prior to being filed by

the OPD (ECF #1, Complaint ¶33)

- was filed by the OPD; not Plaintiff (ECF #1, Complaint ¶32; Ex. A, Brief, p. 1);

- was signed by Lee Awbrey, Chief of Appeals for the OPD; not Plaintiff (Ex. A,

6

Brief, p. 20);

- was filed because the OPD determined that it was in the best interest of "our indigent clients to participate as amicus curiae by discussing county indigent defense realities outside of Philadelphia County." (ECF #1, Complaint ¶49);

- was filed because the OPD had a "substantial interest in the matter" as the OPD "represents indigent individuals facing criminal charges at all stages of their proceedings." (Ex. A., Brief p. 1); and,

- was filed because the OPD had "a direct interest in the petition for judicial intervention that seeks to curb improper and excessive bail determinations, increase accountability, promote uniform practices amongst the counties, and fortify Pennsylvania's existing law."  (Ex. A., Brief p. 1).

Given these undisputed facts, the Brief was undeniably prepared for, and submitted by, the OPD for the benefit of its indigent clients. As such, under no circumstances could the Brief constitute "citizen speech" of Plaintiff as defined by the United States Supreme Court in *Garcetti* and binding caselaw developed in the wake of that decision.

### a.   The Brief was Prepared by the OPD as a part of its Professional Duties

Plaintiff alleges that his "ordinary job duties did not include the public reporting of Montgomery County's illegal bail practices[1] or the filing of an amicus brief on an issue that does not directly involve the representation of current clients, and is intended to support efforts to reform statewide bail practices." (ECF #1, Complaint ¶64).  This allegation, however, belies the

---

[1] The "public reporting of Montgomery County's illegal bail practices" as alleged in the Complaint was the filing of the Brief itself.  The Complaint alleges no other "report" upon which Plaintiff's action is based.  (Complaint ¶65, ¶59).

facts set forth in the Brief and contradicts allegations contained in the Complaint.

While it may be true that the Brief was submitted in support of efforts to reform statewide bail practices, the OPD represented to the Pennsylvania Supreme Court that the OPD had a "direct interest" in the litigation, stating that the bail practices at issue "affects our clients." (Ex. A., Brief p. 1). The Brief emphasizes that "[o]ur office has a substantial interest in this matter." On its face, it is clear this is not the speech of Plaintiff as a citizen; but rather, the speech of the OPD on behalf of its clients. The fact that the Brief advanced the interests of many OPD clients – as opposed to a single client -- is of no import in analyzing whether the Brief constitutes "citizen speech." In any event, contrary to Plaintiff's assertion, the Brief was filed by the OPD on an issue "directly involving the representation of current clients." This is confirmed by Plaintiff email to Defendant Soltysiak on February 13, 2020 (recited in the Complaint), in which Plaintiff states that "our office determined that **it was in the best interests of our indigent clients to participate as amicus curiae…**". (ECF #1, Complaint ¶49).

Moreover, the public record provides further evidence that the participation by amicus brief was within the ordinary course of conduct for the OPD. In the 12 months prior to the filing of the Brief relevant to this matter, the OPD participated as an amicus in two other cases. (See the publicly available docket entries attached as Exhibit "B" hereto). This makes it clear that the filing of amicus briefs is not outside the scope of the OPD's course of conduct in advancing the interests of its indigent clients. As such, the filing of an amicus brief by the OPD cannot be considered "citizen speech" of the Plaintiff, especially where here, the Plaintiff did not even sign the Brief.

Moreover, Plaintiff concedes that the Brief was filed in connection with his official duties when he claims irreparable harm:

The retaliation for speech and for Plaintiff Beer's efforts to fulfill his constitutional, statutory and professional responsibilities creates a profound chill on expression by Plaintiff Beer **and others within the OPD** thereby establishing irreparable harm. There is no legal remedy available to timely obviate this chill of free speech, **a matter that has substantial impact on the public's interest in having a Chief Public Defender who is independent and willing to advocate for the OPD's clients.**

(ECF #1, Complaint ¶61) (emphasis added). Plaintiff contends he was exercising his independent decision-making authority **as the Chief Public Defender** when he determined to file the Brief, not speaking as a private citizen. This is further confirmed by Plaintiff's expressed concern regarding the purported "chilling effect" on other OPD staff. Plaintiff reasserts this admission in Count III of the Complaint alleging that Defendants improperly interfered with the independence of the OPD by terminating his employment in retaliation for filing the Brief.

Finally, by alleging he was fulfilling his "statutory and professional responsibilities" by filing the Brief (ECF #1, Complaint ¶61), Plaintiff concedes that the brief was an "expression [made] pursuant to [his] professional duties." *Garcetti,* 547 U.S. at 426, 126 S.Ct. 1951. The reference to Plaintiff's "statutory duties" in paragraph 61 of the Complaint could only be a reference to Plaintiff's duties under the Pennsylvania Public Defender Act -- duties that would be irrelevant if the Brief were filed in Plaintiff's individual capacity. As *Garcetti* makes clear, such expressions are not protected by the First Amendment.

Taking all of these factors into consideration and applying a "practical approach" as required by the Supreme Court, Plaintiff was unquestionably acting in his official capacity as Chief Public Defender, and not as a private citizen, when the OPD decided to file the Brief. Thus, Plaintiff's expressions are not protected by the First Amendment and his claim must fail.

### b.   *The Brief Was Prepared by the OPD Using Its Specialized Knowledge*

As the Third Circuit Court of Appeals in *Foraker* and *Gorum* held, speech based upon a

public employee's specialized knowledge and experience gained on the job is not protected by the First Amendment. In *Gorum*, the court found that it was "Gorum's special knowledge of, and experienced with" the school's disciplinary code that gave him the opportunity to speak on the student's behalf; it was his position as faculty advisory to the fraternity that allowed him to rescind the President's invitation to speak. *Gorum*, 561 F.3d at 186.

Here, the Brief was clearly written based upon the specialized knowledge and experience of the OPD, gained during the representation of indigent defendants. As alleged in both the Complaint and the Brief, the OPD used specific examples of cases handled by OPD attorneys to support the arguments in the Brief.  (ECF #1, Complaint ¶¶ 35-38; Ex. A, Brief, pp 2-5).  The OPD's knowledge of these specific examples, and their experience with the cash bail system in the Montgomery County courts, could only have been acquired as a result of the specialized knowledge and experience gained during the course and scope of employment at the OPD. Thus, under *Foraker* and *Gorum*, the Brief cannot be considered "citizen speech," and is not protected by the First Amendment.

For all of these reasons, Count I of the Complaint must be dismissed with prejudice.

C.  **Count II of Plaintiff's Complaint Under the Pennsylvania Whistleblower Law Should be Dismissed with Prejudice Pursuant to Fed. R. Civ. P. 12(b)(6)**

Count II of the Complaint asserts a violation of the Pennsylvania Whistleblower Law, 43 Pa C. Stat. §1421 *et seq*, (the "WBL").  The WBL provides that "no employer may discharge, threaten, or otherwise discriminate or retaliate against an employee ... [who] makes a good faith report ... to the employer or appropriate authority [of] an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act."  43 P.S. § 1423(a).  In this case, Plaintiff alleges an instance of "wrongdoing," not waste, and asserts that the Amicus Brief constitutes a "report" under the WBL. (ECF #1, Complaint ¶¶72, 74).

**1.      The Amicus Brief is not a Report Made by Plaintiff.**

As discussed above at pages 6 to 9, Plaintiff readily admits that the Brief was not filed by

or on behalf of Plaintiff; but rather, on behalf of the OPD.  (ECF #1, Complaint ¶ 32).  The WBL

defines the term "employee" as "a **person** who performs a service for wages or other

remuneration under a contract of hire, written or oral, express or implied, for an employer."  43

P.S. §1422 (emphasis added).  The OPD is not an "employee" under the statute.  As such,

Plaintiff, by his own pleading, cannot establish that *he is an employee who made a report* of

wrongdoing to appropriate authorities.

 Moreover, this is not a "report" regarding alleged wrongdoing.  It is no more than it

purports to be -- an Amicus Brief filed by the OPD in a Kings Bench Petition against the

Arraignment Court of Magistrates of the First Judicial District.  It is a brief urging "clear judicial

directives and uniform practices for bail determinations throughout Pennsylvania," and further

urging the Court to clarify applicable rules and standards to "provide accused persons throughout

the state with basic protections that they are due while they await their opportunity for a full and

fair trial . . . ." (Ex. A, Brief, pp. 19-20).  The purported "report" did not seek relief regarding

bail-setting practices specific to Montgomery County; nor was that even an issue before the

Court.  (ECF #1, Complaint ¶¶ 27-29).  Indeed, there was no way for the Court (assuming it is an

appropriate authority under the WBL) to even discern that somehow this was a whistleblower

complaint of Plaintiff regarding purported unlawful County practices that required investigation.

**2.      The Amicus Brief is Not a Report of Wrongdoing Because it did not Allege
a Violation of the Law that Defendants are Charged with Enforcing.**

The WBL defines "wrongdoing"  as "a violation which is not of a merely technical or

minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or

regulation . . . *designed to protect the interest of the public* or the employer."  43 P.S. § 1422

(emphasis added).  Courts have interpreted the phrase "designed to protect the interest of the public" to mean that the law or regulation violated must be of the type that the employer is charged to enforce for the public good or one dealing with the internal administration of the employer.  *Gray v. Hafer*, 651 A.2d 221 (Pa. Commw. Ct. 1994) (preliminary objections to WBL Count sustained where investigator for General Auditor reported wrongdoing of University employees but conduct did not violate a statute General Auditor was charged to enforce), *aff'd per curiam*, 669 A.2d 335 (1995); *Golaschevsky v. Commonwealth of PA*, 683 A.2d 1299 (Pa. Commw. Ct. 1996) (no report of wrongdoing under WBL where computer programmer employed by DEP complained that co-employees were violating federal copyright laws as such laws were not of the type DEP was charged to enforce).  *See also*, *Sea v. Seif*, 831 A.2d 1288 (Pa. Commw. Ct. 2003) ( "if the investigation does not involve the employer itself, it must at a minimum involve violation of statutes or codes which the employer is charged to enforce for the benefit of the public, i.e., there must be a clear nexus between the Employer's performance of its public duty and the subject of the investigation.")

The court in *Gray* provides a simple example extrapolated from the facts of that case:  if Temple University officials received parking tickets, because parking tickets are not laws of the type enforced by the Auditor General and have nothing to do with the internal administration of that office, the parking violation also would not be considered "wrongdoing" for the purpose of the Whistleblower Law.  *Gray*, *supra*, 651 A.2d at 224.  Similarly, the wrongdoing alleged in this case does not involve laws that Defendants are charged with enforcing for the public good.

The Brief is unequivocal as to the laws purportedly violated:  the Pennsylvania Rules of Criminal Procedure regarding the setting of bail as well as liberty deprivations in violation of the Constitutions of the United States and the Commonwealth of Pennsylvania.  (Ex. A, Brief, p.

14).  The Brief is equally clear as to who is responsible for enforcement of these bail procedures in a purportedly unlawful manner -- the Magistrate District Justices ("MDJs") sitting throughout Montgomery County.  Thus, the Brief contends:

- In Montgomery County, defendants' bail determinations are before MDJs in courtrooms located throughout the county. (Ex. A, Brief, p. 6).

- Montgomery County's MDJs routinely impose cash bail on indigent defendants without any inquiry into their ability to pay.  (Id.).

- Montgomery County's MDJs regularly impose excessive bail amounts for the sole purpose of ensuring pretrial incarceration, as opposed to providing assurance of future court appearance upon release.  (Ex. A, Brief, pp. 6-7).

- [B]ail determinations are regularly made in cursory hearings that are not recorded, do not follow any normative evidentiary standards, and do not consider alternative community safety.  (Ex. A, Brief, p. 7).

- [T]here are no local procedures in Montgomery County offering on-call judges to rapidly consider oral bail modification requests. (Ex. A, Brief, p. 8).

- Preliminary hearings in Montgomery County rarely occur within a week of bail determination.  (Ex. A, Brief, p. 8).

- It is common practice for Montgomery County MDJs to initially schedule preliminary hearings within the fourteen-day window required by Pa. R. Crim. P. 540, but then continue the hearings in a manner that may, or may not, be in compliance with the procedures of Rule 542 (G).  (Ex. A, Brief, pp. 8-9).

- In spite of the plain language of Rule 524, it is the common practice for the minor courts of Montgomery County to impose monetary conditions of bail for the purpose of

13

ensuring that a defendant remains incarcerated until trial.  (Ex. A, Brief, p. 10).

- [M]inor courts often fail to follow the plain meaning of the applicable Rules of
  Civil Procedure when determining bail eligibility and setting conditions of release.  It is
  thus unlikely that they will unilaterally and uniformly apply a meaningful evidentiary
  standard to bail determinations absent guidance from this Court.  (Ex. A, Brief,  p. 18).

(See further examples at Ex. A, Brief, pp. 2, 12-14, 17, 19-20).

The Complaint does not allege that the County has authority over the MDJs.  To the contrary, MDJs are part of the Commonwealth's unified judicial system under the administrative authority of the Pennsylvania Supreme Court.  *See* Const. Art. 5, § 1; *See Leiber v. County of Allegheny*, 654 A.2d 11 (Pa. Commw. Ct. 1994) (Magistrate's courts are of a subordinate nature having attributes of legally constituted courts of justice with each district justice having statewide jurisdiction).  The Pennsylvania Supreme Court has the sole power and responsibility to supervise the practice and procedure and the conduct of all courts.  *L.J.S. v. State Ethics Commission*, 744 A.2d 798, 802 (Pa. Commw. Ct. 2000).

In accordance with the Constitutional principal of separation of powers among the three independent branches of government, the executive branch may not infringe upon the powers or duties of the judiciary.  *Id*. at 801-02 (*citing Eshelman v. Commissioners of Berks County,* 62 Pa. Cmwlth. 310, 436 A.2d 710 (1981)), *aff'd per curiam*, 502 Pa. 430, 466 A.2d 1029 (1983); *Gardner v. Thomas G. Peoples, Jr.. President Judge of the Court of Common Pleas of Blair County*, 506 A.2d 479 (Pa. Commw. Ct. 1986) (constitutionally impermissible for the county commissioners to impose a mandatory retirement age upon court employees).  In fact, MDJs are immune from suit under the WBL.  *Jakomas v. McFalls*, 229 F. Supp. 2d 412, 423 (W.D. Pa. 2002); *Scrip v. Seneca*, 191 A.3d 917, 927-28 (Pa. Commw. Ct. 2018);  *Thomas v. Grimm*, 155

14

A.3d 128  (Pa. Commw. Ct. 2017); *Russo v. Allegheny County*, 125 A.3d 113 (Pa. Commw. Ct.

2015) (WBL does not apply to the Judiciary), *aff'd per curiam,* 637 Pa. 398 (2016).

In short, to the extent Plaintiff reported anything, he reported on the purported unlawful

practices of the bail-setting authorities, the MDJs.  Plaintiff does not allege that the wrongdoing

deals with the internal administration of the County, nor could he as the MDJs are not County

employees.  Defendants are not charged with upholding the Pennsylvania Rules of Criminal

Procedure or constitutional liberty interests when it comes to the bail-setting practices of the

Courts.  To the contrary, the County and the individual defendants are constitutionally precluded

from encroaching upon the powers of the judicial branch.  As such, the laws at issue are not of

the type Defendants are charged to enforce for the good of the public nor do they deal with the

internal administration of the County.

### 3. The Supreme Court of Pennsylvania is Not an "Appropriate Authority"

The WBL defines "Appropriate Authority" as:

> a Federal, State or local government body, agency or organization having
> jurisdiction over criminal law enforcement, regulatory violations, professional
> conduct or ethics, or waste or a member, officer, agent, representative or
> supervisory employee of the body, agency or organization.  The term includes, but
> is not limited to, the Office of Inspector General, the Office of Attorney General,
> the Department of Auditor General, the Treasury Department, the General
> Assembly and committees of the General Assembly having the power and duty to
> investigate criminal law enforcement, regulatory violations, professional conduct
> or ethics, or waste.

The Pennsylvania Supreme Court is <u>not</u> specifically listed in the WBL like the other

investigative bodies.  Nor does the Court have the power to <u>investigate</u> criminal law enforcement

or regulatory violations.  The Court may investigate professional and ethical conduct of judges

and attorneys admitted to the bar of Pennsylvania.  Yet ethics was not the subject of Plaintiff's

purported "report;" but rather, the need for the Supreme Court to provide "clear judicial

directives and uniform practices for bail determinations throughout Pennsylvania." The Brief

did not seek the Court's investigation into unethical or unprofessional judicial conduct, but

changes to the Rules of Criminal Procedure regarding the setting of bail and the imposition of

evidentiary standards.

For all of these reasons, Count II of the Complaint alleging a violation of the

Pennsylvania Whistleblower Law should be dismissed.

**D.** **Count III of Plaintiff's Complaint for Wrongful Discharge Should be
Dismissed with Prejudice Pursuant to Fed. R. Civ. P. 12(b)(6).**

Count III of Plaintiff's Complaint is entitled "Wrongful Discharge in Violation of Public

Policy." Other than incorporating prior factual allegations, it is very short. In asserts that by

firing Plaintiff allegedly in retaliation for the filing of the Brief, the Defendants violated

Pennsylvania public policy. (ECF #1, Complaint ¶¶77-80). This Court should dismiss Count III

since Defendants have immunity for a claim of wrongful discharge, and the claim itself does not

state a viable claim for relief under Pennsylvania law.

**1.** **The Claim Against the County Fails**

**a.** ***Count III is Barred by the Pennsylvania Political Subdivision Tort
Claims Act***

In response to the Supreme Court's abrogation of government immunity in *Ayala v.*

*Philadelphia Board of Public Education,* 453 Pa. 584, 305 A.2d 877 (1973), the Pennsylvania

Legislature enacted the Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8541-8564

("PTSCA"). *See Mascaro v. Youth Study Center,* 514 Pa. 351, 355, 523 A.2d 1118, 1120 (1987).

The Act "raises the shield of governmental immunity against any damages on account of any

injury to a person or property caused by any act of a local agency or employee thereof or any

other person, except as otherwise provided in 42 Pa.C.S. § 8542." *Id.*

16

Since the Legislature intended through the enactment of PSTCA to provide governmental immunities, exceptions to such immunity are narrowly construed. *Finn v. City of Philadelphia,* 541 Pa. 596, 601, 664 A.2d 1342, 1344 (1995). *See also Kiley by Kiley v. City of Philadelphia,* 537 Pa. 502, 506, 645 A.2d 184, 185–86 (1994) ("Because of the clear intent to insulate government from exposure to tort liability for any of its acts, exceptions carved out by the Legislature from this general rule are strictly construed.").

Under PSTCA, local agencies are generally exempt from damages for any injuries caused by the agency or its employees. 42 Pa.C.S. § 8541. An injured party may recover in tort from a municipality only if: (1) damages would be otherwise recoverable under common law or statute; (2) the injury was caused by the negligent act of the local agency or an employee acting within the scope of his official duties; and (3) the negligent act of the local agency falls within one of eight enumerated categories. *Id.* The eight exceptions to local agency immunity are: (1) vehicle liability; (2) care, custody or control of personal property; (3) care, custody, or control of real property; (4) trees, traffic controls, and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody, or control of animals. 42 Pa.C.S. § 8542.

It is well-settled that a wrongful discharge claim does not fall within any of the exceptions to immunity laid out in PSTCA § 8542. *See, e.g.*, *DeSimone v. Coatesville Area School District*, 248 F. Supp. 2d 387 (E.D. Pa. 2003) (*citing DeMuro v. Philadelphia Housing Authority*, No. 98-3137 1998 WL 962103 at *4 (E.D. Pa. Dec. 22, 1998) (the tort of wrongful discharge is not recognized as an exception to sovereign immunity in the PSTCA)); *Haiden v. Greene Cty. Career and Tech. Ctr.,* No. 08–1481, 2009 WL 2341922, at *2 (W.D. Pa. July 27, 2009); *Snavely v. Arnold,* No. 08–2165, 2009 WL 1743737, at *6, fn. 8 (M.D. Pa. June 18, 2009) (*citing Lancine v. Giles,* 132 Pa.Cmwlth. 255, 572 A.2d 827, 830 (Pa. Commw. Ct. 1990);

17

*Katzenmoyer v. City of Reading,* 158 F. Supp 2d 491, 502-03 (E.D. Pa. 2001) (dismissed claim for wrongful discharge as to the city because PSTCA bars claims for intentional torts); *McNichols v. Commonwealth, Dep't. Of Transportation,* 804 A.2d 1264, 1267 (Pa. Commw. Ct. 2002) (same); *Goldinger v. County of Butler*, No. 89-632, 1990 WL 309411 (Pa. Com. Pl. September 6, 1990) (the tort of wrongful discharge is not listed as an exception to immunity).

To the extent that Plaintiff seeks reinstatement of his employment via a request for injunctive relief, the County remains immune under PSTCA because such immunity applies both to damages claims and to claims for injunctive relief that require the government agency to take affirmative action. *See Plaza v. Herbert, Rowland & Grubic, Inc.*, No. 344 C.D. 2016, 2017 WL 519827, at *3 (Pa. Commw. Ct. Jan. 30, 2017) (*citing Swift v. Department of Transportation*, 937 A.2d 1162, 1168 & n.7 (Pa. Cmwlth. 2007) ("The General Assembly has not waived immunity for equitable claims seeking affirmative action by way of injunctive relief"); *see also Rooney v. City of Phila.*, 623 F. Supp. 2d 644 (E.D. Pa. 2009) (city and SEPTA immune from suit for affirmative action by way of injunctive relief under PSTCA).

Here, Count III asserts a common law claim for wrongful discharge in violation of Pennsylvania public policy. The County is broadly immune from such claim under PSTCA, and none of the Complaint's allegations take Count III outside of the immunity.

### b.  *Count III Does Not State a Valid Claim for Relief Since it Does Not Set Forth a Clearly Defined Public Policy.*

Plaintiff asserts that his termination violated Pennsylvania public policy. The Complaint does not, however, define with any clarity the public policy allegedly violated or the source of that public policy. It cites only to a generalized policy of independence of public defenders' offices within the Commonwealth established by unidentified decisions of the Pennsylvania Supreme Court. The Complaint alleges that, "[p]laintiff's termination was a violation of a clear

mandate of public policy, set by the Pennsylvania Supreme Court establishing the independence of the Offices of the Public Defender throughout the Commonwealth of Pennsylvania." (ECF #1, Complaint ¶80). The Complaint allegations do not state a valid claim for wrongful discharge in violation of public policy.

Pennsylvania is an at-will employment state. In general, "an employer may discharge an employee with or without cause, at pleasure, unless restrained by some contract." *Rothrock v. Rothrock Motor Sales, Inc.*, 810 A.2d 114, 117 (Pa. Super. 2002). As the Pennsylvania Supreme Court has stated, "[a]s a general proposition, the presumption of all non-contractual employment relations is that it is *at-will* and that this presumption is an extremely strong one. An employee will be entitled to bring a cause of action for a termination of that relationship only in the most limited of circumstances where the termination implicates a clear mandate of public policy in this Commonwealth." *McLaughlin v. Gastrointestinal Specialists, Inc.*, 561 Pa. 307, 314, 750 A.2d 283, 287 (2000); *see also Clay v. Advanced Computer Applications, Inc.*, 522 Pa. 86, 559 A.2d 917, 918 (1988) (while there is no common law cause of action for termination of an at-will employment relationship, there are "the most limited of circumstances, where discharges of at-will employees threaten clear mandates of public policy."); *see also Woodson v. AMF Leisureland Centers, Inc.,* 842 F.2d 699, 701 (3d Cir. 1988) (A wrongful discharge claim under Pennsylvania law sounds in tort and may be maintained "only when important and well recognized facets of public policy [are] at stake.") (citations omitted).

To state a claim for wrongful discharge based on the public policy exception to the at-will-employment doctrine, "the employee must point to a clear public policy articulated in the constitution, in legislation, an administrative regulation, or a judicial decision." *Hunger v. Grand Central Sanitation*, 670 A.2d 173, 175 (Pa. Super. 1996). Courts should find that a

termination violates Commonwealth public policy "only in the clearest of cases."  *Weaver v. Harpster,* 601 Pa. 488, 975 A.2d 555, 563 (2009).  Thus, violations of public policy sufficient to state a wrongful discharge claim have been found only in certain, very specific circumstances, *e.g.*, when an employee was terminated for applying for worker's compensation benefits, *Shick v. Shirey,* 716 A.2d 1231 (Pa. 1998); when an employee was terminated for refusing to submit to a polygraph test; *Kroen v. Bedway Security Agency*, 633 A.2d 628 (Pa. Super. 1993); when an employee was terminated for serving on a jury, *Reuther v. Fowler & Williams, Inc.*, 386 A.2d 119 (Pa. Super. 1977); and when an employee was terminated for making a report mandated by federal law.  *Field v. Phila. Elec. Co.,* 388 Pa.Super. 400, 565 A.2d 1170, 1180 (1989).

In fact, courts have been reluctant to recognize a public policy sufficient to give rise to a wrongful discharge claim unless the discharge is a result of the employee's compliance with or refusal to violate the law.  "Absent a violation of law, it is difficult for an at-will employee seeking recovery for wrongful discharge to point to a common law, legislative or constitutional principle from which a clear public policy exception to Pennsylvania's doctrine of at-will employment could be inferred."  *Clark v. Modern Grp. Ltd.,* 9 F.3d 321, 328 (3d Cir. 1993).

The Third Circuit Court of Appeals has observed that the narrow exceptions to the at-will employment doctrine in Pennsylvania generally fall into three categories: "an employer (1) cannot require an employee to commit a crime; (2) cannot prevent an employee from complying with a statutorily imposed duty; and (3) cannot discharge an employee when specifically prohibited from doing so by statute."  *Fraser v. Nationwide Mut. Ins. Co.,* 352 F.3d 107, 111-12 (3d Cir.2003) ("[i]t is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring") (*citing Hennessy v. Santiago,*

708 A.2d 1269, 1273 (Pa.Super. 1998)).  *See also Shick v. Shirey,* 456 Pa.Super. 668, 691 A.2d

511, 513–14 (1997), *rev'd,* 552 Pa. 590, 716 A.2d 1231 (1998).

   Here, the Complaint fails to set forth conduct by Plaintiff that falls within the recognized

public policy exceptions.  Plaintiff does not allege that he was compelled by the County to

commit a crime.  Nor does he cite to any specific statute prohibiting the County from terminating

his employment.  According to the Complaint, the conduct giving rise to Plaintiff's termination

was the filing of the Brief, which was done on behalf of the OPD.  (ECF #1, Complaint ¶¶32,

34).  While that conduct was taken in his official capacity as a representative of the OPD,

Plaintiff does not allege, nor could he allege, that the filing of the Brief by the OPD was required

by any statutory or regulatory duty placed upon him.

   Contrast this case with those where a plaintiff complains of being terminated for

engaging in conduct compelled by statute or law.  Even there, courts have not recognized a

viable wrongful discharge claim when the specific statutes relied upon did not create an actual

affirmative duty to engage in the conduct that gave rise to the termination.  For example, in

*Hennessy,* a counselor was terminated after reporting a patient's rape to the local district

attorney.  708 A.2d at 1272.  The plaintiff claimed that different Pennsylvania statutes, parts of

the administrative code, and her national association's code of ethics imposed an affirmative

duty upon her to report the rape of a client.  *Id.* at 1273-74.  The Superior Court declined to find

a valid wrongful discharge claim existed because none of the statutes or codes cited actually

imposed an affirmative obligation upon the plaintiff to report violations.  *Id.*  Contrasting the

case before it with a statute that imposed an affirmative duty to report, the *Hennessy* Court cited

a section titled, "Persons required to report suspected child abuse."  *Id.* at 1274 (*citing* 23 P.S.

§ 6311).  "As its title suggests, this section [explicitly] requires certain people, including mental

health professionals, to report suspected child abuse." *Id.* That was not the case with the statute and codes cited by the *Hennessy* plaintiff, and thus, a wrongful discharge in violation of public policy claim did not exist. *Id.*

Plaintiff fails to identify with any specificity the alleged Commonwealth policy regarding independence of public defenders' offices and how his termination violated such policy. Plaintiff cites to no definitive statements of Commonwealth policy emanating from a statute, rule, regulation or decision of the Supreme Court creating an affirmative duty to file, or to direct the OPD to file, the Brief. Simply stated, Plaintiff has not alleged any Commonwealth public policy sufficient to give rise to a valid wrongful discharge claim, certainly not any defined policy that is extremely clear with virtual unanimity of opinion in regard to it. *Shick,* 716 A.2d at 1235–36 (quotation omitted). Thus, Plaintiff's claim should be dismissed as to the County.

## 2. Count III Should Be Dismissed as Against the Individual Defendants

In addition to Montgomery County, Plaintiff named as defendants the three County Commissioners and its Chief Operating Officer (collectively, the "Individual Defendants"). As the Complaint's caption reveals, the Individual Defendants were sued in their official capacities. (ECF #1, Complaint, caption). This Court should dismiss Plaintiff's wrongful discharge claim against the Individual Defendants because they are covered by governmental immunity.

### a. *Count III is Barred by Governmental Immunity for High Public Officials*

Count III should be dismissed because the Individual Defendants are protected by high public official governmental immunity. The Pennsylvania Supreme Court has long held "that high public officials are immune from suits seeking damages for actions taken or statements made in the course of their official duties. This common law doctrine of tort immunity existed before enactment of the Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8541 *et seq*., and

22

was not abrogated by it." *Durham v. McElynn,* 565 Pa. 163, 772 A.2d 68, 69 (2001), *quoting Lindner v. Mollan*, 544 Pa. 487, 677 A.2d 1194, 1196 (1996).

The doctrine of absolute immunity for high public officials "is unlimited and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction." *Matson v. Margiotti*, 371 Pa. 188, 88 A.2d 892, 895 (1952), *overruled on other grounds, Commonwealth v. Schab*, 477 Pa. 55, 383 A.2d 819 (1978). Whether a public official qualifies as a "high public official" is determined by the court on a case by case basis. *Lindner*, 544 Pa. at 495, 677 A.2d at 1198 (*citing Montgomery v. City of Philadelphia,* 392 Pa. 178, 185, 140 A.2d 100, 105 (1958) (who qualifies as a "high public official" depends on the nature of the official's duties, the importance of the office, and whether the official has policy-making functions)).

High public official immunity has been applied to a wide range of public officials, including but not limited to school board members, *Zugarek v. S. Tioga Sch. Dist.,* 214 F. Supp. 2d 468, 479 (M.D. Pa.2002); a city architect and deputy commissioner of public property, *Montgomery v. Philadelphia*, 391 Pa. 178, 140 A.2d 100 (1958); a county attorney, *Mosley v. Observer Publishing Co.*, 422 Pa. Super. 255, 619 A.2d 343 (1993); a city revenue commissioner, *Factor v. Goode*, 149 Pa. Cmwlth. 81, 612 A.2d 591 (1992); the executive director and assistant director of an intermediate unit, *Azar v. Ferrari*, 898 A.2d 55 (Pa. Commw. Ct. 2006); prison wardens, *Holt v. Northwest Pa. Training Partnership Consortium, Inc.,* 694 A.2d 1134, 1141 (Pa. Commw. Ct. 1997); and a school principal and superintendent, *Malia v. Monchak,* 116 Pa.Cmwlth. 484, 543 A.2d 184, 187 (1988).

23

The Third Circuit Court of Appeals has affirmed that county commissioners, such as defendants Arkoosh, Lawrence and Gale, are "high public officials" entitled to absolute immunity. *See LaVerdure v. County of Montgomery*, 324 F.3d 123, 126 (3d Cir. 2003) (chairman of board of commissioners of Montgomery County was immune from suit for defamation and slander as a "high public official"); *see also Holt,* 694 A.2d at 1140 (Pa. Commw. Ct. 1997), *citing Lindner,* 677 A.2d 1194; *Kuzel v. Krause,* 658 A.2d 856 (Pa. Commw. Ct. 1995) ("[A]s County Commissioners, Commissioners here are 'high public officials'" and, as such, enjoy absolute immunity even when willful misconduct is alleged.") Thus, Count III should be dismissed as to Commissioners Arkoosh, Lawrence and Gale.

Count III should likewise be dismissed as to defendant Soltysiak, who is the County Chief Operating Officer.  (ECF #1, Complaint ¶6).  It is undisputed that as Chief Operating Officer (a/k/a Chief Clerk), Soltysiak is responsible for the day to day operations of the County. *See* https://montcopa.org/453/Chief-Operating-Officer-Chief-Clerk ("The Chief Operating Officer/Chief Clerk is the administrator for the Board of County Commissioners and manages county government affairs on a day-to-day basis.")  When considering the established factors for determining whether an official is a "high public official," Soltysiak's role as Chief Clerk/Chief Operating Officer surely qualifies for immunity.  Moreover, the Chief Operating Officer's role is akin to that of a school superintendent, which has been held to be a "high public official" entitled to immunity for conduct taken as part of his official duties. *See Zugarek v. S. Tioga Sch. Dist.,* 112 F. Supp. 2d 468 (E.D. Pa. 2002) (school superintendent is high public official for immunity purposes).  Thus, Soltysiak is also immune from Count III as a high public official.

### b.  *Count III is Barred by the Pennsylvania Political Subdivision Tort Claims Act*

The Individual Defendants are also immune from Plaintiff's wrongful discharge claim

24

based on local agency immunity under PSTCA.  Section 8545 of the PSTCA provides that:

> An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties *only to the same extent as his employing local agency* and subject to the limitations imposed by this subchapter.

42 Pa.C.S. § 8545 (emphasis added).  The term "employee" includes elected officers acting on behalf of a government unit.  *See* 42 Pa.C.S. § 8501.

State law claims raised against public officials in their official capacities are barred by the PSTCA because such an official necessarily acts within the scope of his office or duties, entitling him to official immunities.  *Cuvo v. De Bias*, 339 F. Supp. 2d 650, 655, fn. 2 (E.D. Pa. 2004), *aff'd in part, rev'd in part and remanded sub nom*, *Cuvo v. De Biasi*, 169 Fed. App'x 688 (3d Cir. 2006), *citing Damron v. Smith,* 616 F. Supp. 424, 426 (E.D. Pa. 1985).  An employee carrying out his official duties is liable only to the extent that the local agency itself would be liable.  *Holt,* 694 A.2d at 1141 (Pa. Commw. Ct. 1997); *see also Holloway v. Brechtse*, 279 F. Supp. 2d 613 (E.D. Pa. 2003) (under PSTCA, municipal agencies' immunity from liability for all state law tort claims extends to municipal offers acting in their official capacities); *DeVatt v. Lohenitz*, 338 F. Supp. 2d 588, 598-99 (E.D. Pa. 2004) (detective entitled to same level of immunity as city employer for acts committed within the scope of his official duties).

While the Complaint includes a throwaway conclusory statement that the Individual Defendants are sued in their individual capacities as well as their official capacities (ECF #1, Complaint ¶10), the Complaint read as a whole makes it clear that this is not the case.  The case caption states that the Individual Defendants were named in their official capacities.  (ECF #1, Complaint, caption).  The Individual Defendants are identified in the body of the Complaint solely with respect to their official titles with the County.  (ECF #1, Complaint ¶¶6-9).  Plaintiff asserts that at all times defendants were acting within the scope of their official duties and under

color of state law.  (ECF #1, Complaint ¶10).  The conduct complained about in the Complaint

was Plaintiff's termination by "Defendants," including the County.  (ECF #1, Complaint ¶¶67,

79).  Since the Individual Defendants have no authority to act on behalf of the County in their

individual capacities, the only way they could have terminated Plaintiff was if they were acting

in furtherance of their official duties.  Thus, their immunity is co-extensive with that of the

County and Count III should be dismissed as against the Individual Defendants under PSTCA.

While it is true that § 8550 of PSTCA lifts the local agency immunity for individual

officials in certain cases, such waiver does not apply in this case.  PSTCA § 8550 provides that

where the official's act:

> constituted a crime, actual fraud, actual malice or willful misconduct, the
> provisions of sections 8545 (relating to official liability generally), 8546 (relating
> to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating
> to limitation on damages) shall not apply.

42 Pa.C.S. § 8550.  This immunity waiver does not apply because the Complaint contains no

allegations of conduct that falls within any of the immunity exceptions.  The Complaint does not

even hint that the Individual Defendants committed any criminal, fraudulent or malicious

conduct.  The only exception that could even remotely apply is for willful misconduct, but no

such willful misconduct is actually alleged by Plaintiff.

In *Kuzel v. Krause,* the Pennsylvania Commonwealth Court dismissed a wrongful

termination claim against a township commissioner because he was immune under the PSTCA.

*Kuzel*, 658 A.2d at 861.  The *Kuzel* plaintiffs asserted that they were wrongfully discharged for

collecting workers' compensation benefits.  *Id.* at 856.  The *Kuzel* plaintiffs claimed that the willful

misconduct immunity exception applied to the conduct that led to their termination.  *Id.* at 859.

In finding that the exception did not apply, the *Kuzel* court held that "willful misconduct"

under the PSTCA means "willful misconduct aforethought."  *Id.* at 860.  It is not sufficient to

merely establish the intentional tort of wrongful discharge and call it "willful misconduct." Rather, a plaintiff relying upon the "willful misconduct" exception must establish that the defendant knew or should have known that it was improper or against public policy to terminate someone for the stated reasons and did so anyway. *Id.* at 860 (*citing Renk v. City of Pittsburgh,* 537 Pa. 68, 641 A.2d 289 (Pa. 1994)). *See also Haiden v. Greene County Career and Technology Center*, No. 08-1481, 2009 WL 2341922 at *2 (W.D. Pa. July 27, 2009).

Here, the Complaint is entirely devoid of any allegations sufficient to prove "willful misconduct" by any of the Individual Defendants. Plaintiff makes no allegations about which defendant(s) actually made the decision to terminate him, only that on February 26, 2020 he was notified that he was fired, which decision he attributes to "Defendants." (ECF #1, Complaint ¶¶58, 60, 69, 79). Plaintiff alleges nothing about the Individual Defendants' respective states of mind. He does not allege that any of the Individual Defendants were aware of the amorphous "public policy" that he believes was violated by his termination, nor that the Individual Defendants knew that his termination allegedly in violation of that "public policy" was wrongful and did it anyway. At most, Plaintiff complains that he was terminated in retaliation for the filing of the Brief and then assumes that the Individual Defendants should be liable for wrongful discharge as a result. That is not sufficient to state a claim excepted from PSTCA immunity.

### c. *Count III is Barred Because the Decision to Terminate Could Not be Made by the Individual Defendants*

Lastly, Count III of the Complaint should be dismissed as against the Individual Defendants because they cannot be held individually liable for a decision which, by law, could have been rendered only by the County Board of Commissioners as a governing body. Plaintiff Beer's appointment as Public Defender was, by virtue of the Public Defender Act, 16 P.S. §9960.1 *et seq.*, an action of the Board of Commissioners, not of any individual commissioner or

27

of the County Chief Operating Officer.  16 P.S. § 9960.4 (The public defender in all counties except Philadelphia County "shall be appointed" by the Board of County Commissioners).  Since the decision to appoint Plaintiff in his position as County Public Defender could only have been made by the Board as a collective, any termination decision is that of the Board as a whole as well, and not of any individual commissioner.  It certainly is not a decision that can be made independently by Soltysiak, the County Chief Operating Officer.  *Id*.

In *Kuzel*, the Commonwealth Court held that the individual township commissioner who was found liable at trial for wrongful discharge was entitled to judgment in his favor because he had no authority to terminate the plaintiffs without action by the entire board of township commissioners.  *See Kuzel*, 658 A.2d at 860–61 ("An individual Township Commissioner alone has no authority; he or she is just one member of the Board of Commissioners and has no power alone to take any action unless a majority of the Board of Commissioners, acting as a body, does so….").  *See also Dewees v. Haste*, 620 F. Supp. 2d 625, 641-42 (M.D. Pa. 2009) *aff'd*, 386 Fed. App'x 133 (3d Cir. 2010) (individual member of a county salary board could not be found liable for the plaintiff's discharge when authority to fire was in the board alone).  There is no reason why the analysis of *Kuzel* does not apply in this situation.  The Individual Defendants cannot be held individually liable for Board action, and thus, Count III should be dismissed as to them.

### E.  Plaintiff's Request To Be Reinstated With a Contract and a "Just Cause" Termination Clause Must Be Stricken

Plaintiff seeks to be restored to the position of Chief Public Defender with a contract stating that he may only be fired for "just cause."  The Court should strike this requested relief as Plaintiff was an employee at will, not entitled to a "contract" or a "just cause" termination provision.

Plaintiff was appointed as Public Defender by the Board of Commissioners pursuant to

28

the Public Defender Act, 16 P.S. §9960.1 *et seq.*  The Act does not provide for the right to a contract or for the right to a "just cause" termination provision. Thus, under Pennsylvania law, Plaintiff was an at-will employee.  As discussed in Section D(1)(c) of this Memorandum *supra*, "an employer may discharge an employee ***with or without cause***, at pleasure, unless restrained by some contract."  *Rothrock v. Rothrock Motor Sales, Inc.*, 810 A.2d 114, 117 (Pa. Super. 2002).  There is no legal authority for abrogating the provisions of the Public Defender Act and imposing a "contract" or a "just cause" termination provision. As such, the requested relief is inappropriate and must be stricken.

### F.      The Court Should Refrain From Exercising its Supplemental Jurisdiction.

Should the Court dismiss Count I of the Complaint as a matter of law, it should refrain from exercising its supplemental jurisdiction over the remaining state claim(s).  When the district court has dismissed all claims over which it has original jurisdiction, the district court has the express authority to decline to exercise supplemental jurisdiction over any related state law claims. 28 U.S.C. § 1367(c)(3); *Growth Horizons, Inc. v. Delaware Cty., Pa.,* 983 F.2d 1277, 1284 (3d Cir. 1993) ("a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction"); *See also Greenwood Partners, L.P. v. Cimnet, Inc.,* 2003 WL 22238981, at *4 (E.D. Pa. Sept. 26, 2003). "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725–26, 86 S. Ct. 1130, 1138–39, 16 L. Ed. 2d 218 (1966).  Here, Plaintiff's Section 1983 claim was the sole basis of the Court's original jurisdiction. For reasons already discussed, that claim fails as a matter of law. As a result, the Court is well within its right to refuse to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  This

is particularly called for when the claim involves a matter of state public policy such as Count

III, and where the action is in its early procedural stages.  *Cf Growth Horizons, supra,* 983 F.2d

at 1284-85 (no dismissal of state claims where trial on merits had already occurred).  As such,

the Court should dismiss Counts II and III under Rule 12(b)(1) for lack of subject matter

jurisdiction.  *See Polite v. Rendell*, 2010 WL 1254334, at *4–5 (E.D. Pa. Apr. 1, 2010).

## III.   <u>CONCLUSION</u>

For the reasons set forth above, Defendants respectfully request that the Court dismiss

Plaintiff's Complaint in its entirety and for such other relief the Court deems just and appropriate.

Respectfully submitted,

Date:  May 21, 2020

*/s/ Raymond McGarry*
Mary Kay Brown, Esquire
Raymond McGarry, Esquire
Jami B. Nimeroff, Esquire
Brown McGarry Nimeroff LLC
2 Penn Center, Suite 610
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102
T:  (267) 861-5330

*Attorneys for Defendants Montgomery County,*
*Commissioner Dr. Valerie Arkoosh, Commissioner*
*Kenneth Lawrence, Commissioner Joseph Gale,*
*and Chief Operating Officer Lee Soltysiak*